UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRENCE BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 08-CV-6363 |
| Police Officer MICHAEL MALANIUK | ) | |
| (#11652), | ) | Judge John W. Darrah |
| Police Officer MICHAEL SHIELDS | ) | |
| (#5951), | ) | |
| Individually, | ) | |
| and THE CITY OF CHICAGO, | | |

Defendants.

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Terrence Barber's Motion for a New Trial. Plaintiff

alleges errors occurred during his first jury trial, warranting the hearing of a new trial.

Based on the discussion below, Plaintiff's Motion for a New Trial is denied.

### BACKGROUND

Plaintiff claimed he was falsely arrested by Defendants Michael Shields and

Michael Malaniuk, Chicago Police Officers, on December 14, 2005, and, further, that

Defendants used excessive force against him during his arrest and assaulted him. (Am.

Compl. ¶¶ 6-8, 20-21; Trial Tr. 8:8 – 8:20, Nov. 14, 2011.) Plaintiff asserts the force

used by the Defendants caused Plaintiff's head to be injured and that this injury required

stitches. (Trial Tr. 8:14 – 8:17, Nov. 14, 2011.) Defendants denied these allegations,

claiming they had probable cause to arrest Plaintiff and that Plaintiff's injuries were self-inflicted. (Defs.' Answer at 3.)

After a pretrial conference on November 8, 2011, a jury trial commenced on November 14, 2011. The trial ended on November 17, 2011, and after deliberation, the jury returned a verdict, finding in favor of the Defendants that same day; judgment was entered on the verdict. On December 16, 2011, Plaintiff filed a Motion for a New Trial. Plaintiff advances several theories in support of his motion for a new trial, arguing the Court erred by: admitting Plaintiff's subsequent arrest and his felony conviction, barring use of prior inconsistent statements by Defendants and prior consistent statements by Plaintiff, and demonstrating what the Plaintiff termed prejudice and bias against Plaintiff.

## LEGAL STANDARD

Plaintiff's Motion for a New Trial[1] is governed by Federal Rule of Civil Procedure 59, which provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Succeeding on a Rule 59 motion requires the movant to meet a particularly difficult standard. The Seventh Circuit has provided that "a verdict will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (citing *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)). In considering a motion for a new trial, "the district court has the power to get a general

---

[1] Plaintiff fails to identify what Rule of Civil Procedure his motion invokes; for purposes of this analysis, his motion will be construed as a Rule 59 motion.

sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County, Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).

To obtain a new trial on the grounds of an erroneous evidentiary ruling, the party must show that such a ruling affected his substantial rights. Fed. R. Evid. 103(a). Specifically, an erroneous ruling will only warrant a new trial where the error "had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *EEOC v. Management Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012) (quoting *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 564 (7th Cir. 2006) (*Farfaras*)).

## ANALYSIS

### *Admission of Plaintiff's Subsequent Arrest*

Plaintiff first argues the Court erred in permitting Defendants to present evidence at trial of Plaintiff's subsequent arrest. (Mot. at 2.) Plaintiff argues this violated his motions *in limine* and that this testimony alone was so prejudicial as to warrant the granting of a new trial. (*Id.*)

During the pretrial conference, held on November 8, 2011, both Plaintiff and Defendants presented several motions *in limine*. Plaintiff's first motion *in limine* sought to exclude from trial any mention of Plaintiff's subsequent arrests and convictions. (Pl.'s Mot. *in Limine* at 2.) When asked at the pretrial conference if Defendants anticipated referring to Plaintiff's subsequent arrests at trial, attorney for Defendants, Brian Gainer, indicated: "We have no intention of doing that. . . . But I would just ask that your Honor

3

. . . if the door is open, we at least be given an opportunity to revisit that." (PreTrial

Conf. Tr. 25:10 – 25:15, Nov. 8, 2011.) The Court agreed that if the door was opened,

Defendants could revisit their position regarding the subsequent arrests. (*See* Pretrial

Conf. Tr. 25:16, Nov. 8, 2011.)

Plaintiff's fifth motion *in limine* stated: "The Defendants must not be permitted

to in any way to [sic] argue or imply that Plaintiff has, or had, a drinking or alcohol

problem." (Pl.'s Supp. Mot. *in Limine* at 2.) During the pretrial conference, the parties

discussed this motion.

> THE COURT: Here is supplemental - - implying plaintiff
> has a drinking or an alcohol problem . . .
>
> MR. GAINER: With regard to the drinking problem,
> Judge, we don't plan on saying the guy had a drinking
> problem.
>
> THE COURT: Your theory is, as I read your response, was
> there was evidence he was drinking that night.
>
> MR. GAINER: He said it, and then the officers observed
> it. And so I don't know how you separate the two.
>
> THE COURT: I think that would be fair.
>
> MR. FOX (Plaintiff's Counsel): We just don't want them
> to try and say he had an ongoing drinking problem before
> and - - and he was known to drink before that day.
>
> THE COURT: Okay.

(Pretrial Conf. Tr. 29:15 – 30:8, Nov. 8, 2011.) Rulings on motions *in limine* may be

modified during the course of a trial if a modification is warranted. *Farfaras*, 433 F.3d at

565 (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)). As Plaintiff concedes in

his Motion for a New Trial, the Court acknowledged its rulings on the motions *in limine*

were fluid, explaining: "anything that I have denied here, if something arises at trial that you think - - and I'm saying this to both of you - - puts a different slant on an objection that I have already overruled, you can renew it again and I will listen to it if there's something new." (Mot. at 7; Pretrial Conf. Tr. 12:8 – 12:12, Nov. 8, 2011.)

The issue of Plaintiff's drinking was one of the, if not the most, disputed critical issues in the case. It was first introduced by Plaintiff in his counsel's (Attorney Jonathan Ksiazek) opening statement: "What the medical records from the treatments of Terrence Barber will indicate is that he was not intoxicated on December 14, 2005 . . . this is important [because] . . . I expect that [Defendants] will tell you that on December 14, 2005, when they encountered Terrence Barber, he smelled of alcohol, [and] he was falling down drunk." (Trial Tr. 17:1 – 17:11, Nov. 14, 2011.) Additionally, Plaintiff's counsel questioned each of his witnesses to negate Plaintiff's alleged intoxication at the time of the incident. (*See* Examination of Witness Isiss Walker, Trial Tr. 40:12 – 40:21, Nov. 14, 2011; Examination of Witness Cecilee Barber, Trial Tr. 229:17 – 230:2, Nov. 15, 2011; and Examination of Plaintiff Terrence Barber, Trial Tr. 267:12 – 268:1, 273:17 – 274:4, Nov. 15, 2011.)

To the contrary, Defendant Malaniuk testified Plaintiff had a very strong odor of alcohol about him and that Plaintiff was intoxicated but still able to control his body. (Trial Tr. 79:17 – 80:3, 87:20 – 88:10, Nov. 14, 2011.) Defendant Shields testified that he believed at the time of the incident that Plaintiff was intoxicated, and that Plaintiff told him he had been drinking Martell cognac all day. (Trial Tr. 182:14 – 185:1, Nov. 15, 2011.)

5

Plaintiff testified on direct examination as follows:

> Q. Did you drink any alcohol that day?
>
> A. No.
>
> Q. Were you stumbling around?
>
> A. No.
>
> Q. Were you slurring your words?
>
> A. No, sir.
>
> Q. Did you smell of alcohol?
>
> A. No, sir.
>
> Q. Did you smell any alcohol in the area at that time?
>
> A. No, sir.

(Trial Tr. 273:17 – 274:4, Nov. 15, 2011.)

Plaintiff was cross-examined by Defendants' attorney, Richard Levy, as follows:

> Q. Okay. When you go back to Marshall Field Gardens you would hang around the outside of the entranceway?
>
> A. No. Sometimes on the inside, most of the time.
>
> Q. Okay. And would you go sometimes on the outside as well?
>
> A. Yes, when I was walking to the store.
>
> *Q. Do you drink at all, sir?*
>
> *A. No, sir.*
>
> *Q. You don't drink, period?*
>
> *A. Period, at all.*

6

(Trial Tr. 336:14 – 337:1, Nov. 16, 2011 (emphasis added).) These questions were asked and answered without objection. Attorney Ksiazek objected after the last answer on the basis that they violated Plaintiff's fifth motion *in limine*. (Trial. Tr. 337:2 – 337:9, Nov. 16, 2011.) A sidebar conference was conducted outside the hearing of the jury. Plaintiff's counsel argued no evidence of Plaintiff's drinking should come in other than on the day in question. The Court stated: "One of the central issues of this case is whether or not he was intoxicated on that day and this cross-examination is fair to explore . . . I'm not going to restrict cross-examination in that regard. If you're trying to imply he's an alcoholic or something, that's one thing . . ." (Trial Tr. 338:1 – 338:8, Nov. 16, 2011.) Attorney Levy confirmed he was not seeking to imply Plaintiff was an alcoholic, which, as discussed above, was the crux of what Plaintiff sought to bar from trial in his fifth motion *in limine*. However, during this sidebar, Attorney Levy also mentioned he believed Plaintiff had just lied during his testimony, because Levy had evidence Plaintiff was arrested at that same location (or a location very near) for under-aged drinking. (Trial Tr. 338:13 – 342:7, Nov. 16, 2011.) The Court agreed with defense counsel that the specific act of consuming alcohol in a public place would not be admissible as conduct attacking a witness's character for truthfulness pursuant to Fed. R. Evid. 608(b).

> THE COURT: And this previous arrest is not going in - - and I wouldn't let this in as a 608(b) incident of prior untruthfulness. Drinking in a public place or obstructing a front door doesn't go to that, and I would agree with you, that the probative value is miniscule and the possible unfair prejudicial effect would be significant. It's not going to this.

> **It's going to an apparent lie that he just told now on the
> witness stand. It doesn't have anything to do with
> asking the jury to draw an inference that the man is
> untruthful because he drank before. That would be
> absurd.**
>
> But it is probative of his truthfulness if, in fact, his
> statement he just made a minute ago under oath is, in fact,
> untrue. That's going to be my ruling.

(Trial Tr. 343:9 – 343:22, Nov. 16, 2011 (emphasis added).) Federal Rule of Evidence
608(b) provides:

> Except for a criminal conviction under Rule 609, extrinsic
> evidence is not admissible to prove specific instances of a
> witness's conduct in order to attack or support the witness's
> character for truthfulness. **But the court may, on cross-
> examination, allow them to be inquired into if they are
> probative of the character for truthfulness or
> untruthfulness of: (1) the witness;** or (2) another witness
> whose character the witness being cross-examined has
> testified about.

Fed. R. Evid. 608(b) (emphasis added).

Attorney Ksiazek further argued against evidence of Plaintiff's subsequent arrest

coming in, asserting it was unfairly prejudicial and violated Plaintiff's first motion *in

limine* regarding subsequent arrests and convictions. Attorney Ksiazek's latter point was

inaccurate; a review of the pretrial conference transcript indicates the Court was reserving

judgment as to its ruling on Plaintiff's first motion *in limine*. As mentioned above, the

Court expressly recognized that if something arose at trial that could change an earlier

ruling or if the "door was opened," the issue could be revisited. (*See* Pretrial Conf. Tr.

12:8 – 12:12, 27:3 – 27:4, Nov. 8, 2011.)

The Court further analyzed the issue at sidebar as follows:

> THE COURT: If he has just said under oath that he's never
> been back there and he has never drank, they should be

8

> entitled to follow that up and impeach him.
>
> Now, the probative value of that impeachment if, in fact, this is correct, on the issue of the defendant's truthfulness or untruthfulness, is significant, is weighty.
>
> The possible prejudice - - unfair prejudice does not substantially outweigh the weighty probative value as to his character for truthfulness.
>
> If you want, if they do this, if they can successfully do this, I will give an instruction that the jury can only consider this on the issue of the defendant's character for truthfulness and not for any other issue.
>
> MR. KSIAZEK: Plaintiff's character.
>
> THE COURT: Plaintiff's character for truthfulness.

(Trial Tr. 342:8 – 342:22, Nov. 16, 2011.)  Plaintiff did not object to the Court's giving

this instruction when it was proposed at sidebar or thereafter.  (*Id.*; Trial Tr. 346:23 –

347:10, Nov. 16, 2011.)

After this discussion at sidebar, Mr. Levy asked the Plaintiff if he recalled being

arrested for underage drinking at 1310 North Sedgewick on August 19, 2009; evidence of

this arrest was admitted over Plaintiff's objection. (Trial Tr. 345:2 – 346:14, Nov. 16,

2011.)  Following that testimony, the Court instructed the jury that it "may consider this

testimony of Mr. Barber only for the purposes of determining the character of Terrence

Barber for truthfulness or untruthfulness and not for any other reason." (Trial Tr. 346:23

– 347:3, Nov. 16, 2011.)

Defendants moved for the admission of the record of Plaintiff's arrest.  Plaintiff's

objection to the admission of this exhibit was sustained.  (Trial Tr. 346:11 – 346:14, Nov.

16, 2011.)  *See* Fed. R. Evid. 608(b), which, as set out above, provides that specific

instances of conduct used to attack a witness's character for truthfulness, except for a criminal conviction under Rule 609, "may not be proved up by extrinsic evidence."

Plaintiff argues in his motion for a new trial that evidence of Plaintiff's arrest should not have been admitted because arrests are not probative of credibility. Plaintiff asserted:

> The law has long been that "arrests" are not probative of credibility. An arrest without more does not impeach the integrity nor impair the credibility of a witness because "(i)t happens to the innocent as well as the guilty." *Michelson v. United States*, 335 U.S. 469, 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948); ***see also*, FRE 609.**

(Mot. at 3-4 (emphasis added).) Plaintiff is correct; an arrest without a conviction cannot be introduced as evidence to impeach the credibility of a witness pursuant to Fed. R. Evid. 609. *See United States v. MacCarthur*, 6 F.3d 1270, 1279-80 (7th Cir. 1993). The Court made it clear that the evidence was not admitted as impeachment by conviction of a crime pursuant to Fed. R. Evid. 609.[2] The probative value is found not in Plaintiff's arrest, but the arrest has probative value in rebutting Plaintiff's statement he made under oath on cross-examination that he never drank. This statement by Plaintiff, if deemed credible by the finder of fact, would be directly contrary to the officers' testimony regarding evidence of Plaintiff's drinking on the night in question, including Plaintiff's admission to the officers that he had been drinking cognac that night. Therefore, the underage drinking arrest on another occasion is relevant and is properly considered by the fact finder in determining the weight to be afforded Plaintiff's testimony that he never

---

[2] Federal Rule of Evidence 608, which was the basis of the Court's ruling, by its terms (as set out above), expressly distinguishes the application of Rule 608 from admission of a conviction under the circumstances provided in Rule 609.

drank, which contradicted Defendants' evidence that Plaintiff had consumed alcohol at the time of his arrest. It was admitted for this limited purpose of attacking Plaintiff's character for truthfulness under Fed. R. Evid. 608(b), and the jury was so instructed. *See* Fed. R. Evid. 608(b), Advisory Committee Notes, providing:

> Particular instances of conduct, though not the subject of criminal conviction, may be inquired into on cross-examination of the principal witness himself or of a witness who testifies concerning his character for truthfulness. Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time. Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury, and that of Rule 611 bars harassment and undue embarrassment.

Moreover, the issue of admissibility of this evidence was subject to the balancing test of Fed. R. Evid. 403. Rule 403 requires the Court to weigh the probative value of evidence against the danger of the evidence to result in unfair prejudice. The Court found that the probative value of an arrest report, indicating Plaintiff's underage drinking activities, despite Plaintiff's sworn testimony otherwise, was not substantially outweighed by the potential of unfair prejudice.[3] Finding evidence to be more probative and useful to the jury than prejudicial is at the trial court's discretion. *See United States v. Lightfoot*, 224 F.3d 586, 588 (7th Cir. 2000). To further avoid the possibility of

---

[3] Evidence that Plaintiff had, on another occasion, been arrested for underage drinking in the same general area as that of the underlying incident is sufficient to support a finding that Plaintiff had drank alcohol, contrary to his testimony he never has done so. *See* Fed. R. Evid. 104(b); *Huddleston v. United States*, 108 S.Ct. 1496, 1501-02 (1988) (footnotes omitted).

prejudicial impact, the jury was immediately given a limiting instruction to consider the

evidence of the other arrest as it related only to Plaintiff's character for truthfulness or

untruthfulness.

Furthermore, the testimony regarding this subsequent arrest was brief, and

Plaintiff offered an explanation as to the circumstances surrounding the arrest. (Trial Tr.

345:12 – 346:10, Nov. 16, 2011.)  There is nothing in this evidence that improperly

affected the outcome of the trial.  Even if this evidence was admitted in error, it certainly

did not have a "substantial influence" over the jury as required to warrant a new trial.

*Farfaras*, 433 F.3d at 564.  Therefore, Plaintiff's motion for a new trial due to the

admission of Plaintiff's subsequent arrest is denied.

### *Admission of Plaintiff's Felony Conviction*

Plaintiff next argues the Court erred in admitting Plaintiff's felony conviction,

claiming the admission of this was unfairly prejudicial and in violation of the motions *in*

*limine*.  (Mot. at 4-5.)  At the pretrial conference, the Court initially sustained Plaintiff's

objection to admitting the felony conviction of possession of a stolen motor vehicle for

purposes of impeaching Plaintiff's character for truthfulness. (Pretrial Conf. Tr. 7:17 –

8:11, Nov. 8, 2011.)  Later in the pretrial conference, Attorney Gainer mentioned

Defendants' position that possession of a stolen motor vehicle was a crime of dishonesty

pursuant to Fed. R. Evid. 609(a)(2), and goes to an individual's character for truthfulness

under Seventh Circuit law. (Pretrial Conf. Tr. 25:13 – 27:8, Nov. 8, 2011.)  The Court

agreed to consider the legal authority Defendants submitted, thereby taking the motion

under advisement.  (*Id.*)  Moreover, as discussed above, it was then made clear to the

parties that the Court's rulings on motions *in limine* may be modified as necessary during the course of a trial. *See supra* pp. 3-4.

In his First Amended Complaint, Plaintiff claimed emotional distress and sought damages caused by the alleged emotional distress. (*See* First Am. Compl. ¶ 13 (alleging "Plaintiff sustained injuries including, but not limited to, humiliation and indignities, medical expenses, suffered great physical, mental, and emotional pain and suffering all to him damage in an amount to be ascertained."); First Am. Compl. at 5, ¶ 1 (requesting judgment against Defendants and specifically "[t]hat Defendants be required to pay Plaintiff general damages, including emotional distress, in a sum to be ascertained.").) At trial, both Plaintiff and his mother testified as to the emotional distress and fear of the police Plaintiff acquired as a result of the underlying incident. Specifically in this regard, Plaintiff's mother, Cecilee Barber, testified:

> Q. Did he [Plaintiff] complain about being afraid of the police?
>
> A: Yes.
>
> Q. Did he complain about being afraid of the police until this very day?
>
> A. Yes.
>
> Q. And it was all because of this event, December 14th of '05?
>
> A. Yes.
>
> Q. There weren't any other reasons he was afraid of the police?
>
> A. No.

(Trial Tr. 249:8 – 249:18, Nov. 15, 2011.) At trial, Plaintiff gave the following testimony

regarding his emotional distress:

> Q. Did you have other symptoms after you came home
> from the 18th District relating to these injuries?
>
> A. Yes. I had major migraines.
>
> Q. Headaches?
>
> A. Yes.
>
> Q. How long did you have those headaches for?
>
> A. For a certain period of time. It was like off and on.
> Like when I go to sleep and wake up I would have them.
>
> Q. Do you still have them today?
>
> A. Not as much as I used to.
>
> Q. Did this incident cause you any emotional distress?
>
> A. Yes. Yes.
>
> Q. Can you describe that for the jury?
>
> A. I was really embarrassed to like walk around with my
> face like that, and I was really like shocked that the police
> would really do something like that to me when I did
> nothing at all.

(Trial Tr. 288:19 – 289:10, Nov. 15, 2011.) Later, on cross-examination, Plaintiff

testified further regarding his emotional distress:

> Q. Okay. Well, is it your testimony that you suffer from
> emotional distress until this very day because of the arrest
> on December 14th of '05?
>
> A. Yes. It left me scared of the police.

14

(Trial Tr. 347:20 – 347:23, Nov. 16, 2011.)[4]

As set out above, Plaintiff testified that the underlying event at issue caused him to be afraid of the police, and his mother corroborated this condition. Plaintiff also testified he did not have any emotional distress from any other interactions with law enforcement. (Trial Tr. 348:18 – 348:20, Nov. 16, 2011.)

Defendants then sought to admit evidence of a supervening cause of Plaintiff's emotional distress, namely, that, following the incident in question, Plaintiff was arrested by the police for possession of a stolen motor vehicle, convicted, and incarcerated for this crime. This was discussed at sidebar: Plaintiff's counsel argued that admitting Plaintiff's felony conviction as a supervening cause of emotional distress would be unfairly prejudicial. (Trial tr. 348:24 – 351:23, Nov. 16, 2011.)

The Court, however, found this fact to be highly probative: "Now, isn't it fair to let the jury know that there's been a significant, similar occurrence in his life of much greater severity so that they may conclude that that has contributed to the distress he's feeling today?" (Trial Tr. 351:14 – 351:17, Nov. 16, 2011.) Again invoking the balancing test of Federal Rule of Evidence 403, the Court found that the risk of unfair prejudice did not substantially outweigh evidence "highly probative to a material element of this case . . . the nature and extent of damages." (Trial Tr. 352:17 – 352:21, Nov. 16, 2011.) *See* Fed. R. Evid. 403. Because Plaintiff sought to recover damages for emotional distress, it was appropriate to apprise the jury of a potentially significant supervening

---

[4] Plaintiff later sought to narrow this assertion, by testifying he was afraid of the two defendant officers but not of police officers generally. (Trial Tr. 347:24 – 348:6, Nov. 16, 2011.)

cause of his emotional distress. However, the Court limited the scope of this evidence: the jury was informed only that, after the night in question, Plaintiff had been convicted of an unrelated crime and served time in prison. The defense was precluded from disclosing that Plaintiff's conviction was a felony conviction for possession of a stolen motor vehicle. (Trial Tr. 356:18 – 357:2, Nov. 16, 2011.) The Court also immediately provided the jury with a limiting instruction, immediately thereafter, stating it "may consider this testimony [of the conviction] only for the limited purpose of determining the issue of emotional distress and damages." (Trial Tr. 357:3 – 357:6, Nov. 16, 2011.)

This brief testimony was not admitted to impeach Plaintiff as to his character for truthfulness, as Plaintiff argues, but, rather, because it was highly probative of the cause of Plaintiff's claimed emotional distress. This testimony, together with the testimony of Plaintiff and his mother on the issue, was considered by the jury in determining the issue and amount of damages, if any, for emotional distress.[5]

Considering the highly probative nature of the evidence of a subsequent conviction and period of incarceration, on the issue of causation and damages, admitting this evidence was not an error affecting Plaintiff's substantial rights. Moreover, the jury was not informed of the nature of the crime, nor that it was a felony, and was instructed to consider the evidence for a specific, limited purpose only, to avoid the possibility of substantial prejudice. It cannot be said that the outcome of the trial would have differed

---

[5] Moreover, Plaintiff's conviction *may* be admissible under Federal Rule of Evidence 609(a)(2), which permits introduction of a prior conviction regardless of whether it was a felony and without a Rule 403 balancing test, if the conviction was for a crime of dishonesty.

had the jury not been apprised of Plaintiff's subsequent conviction. *Farfaras*, 433 F.3d at 564.

Plaintiff's motion for a new trial due to the admission of Plaintiff's subsequent conviction is denied.

*Barring Use of Defendants' Prior Inconsistent Statements*

Plaintiff next argues a new trial is warranted because the Court erred in barring the use of prior statements made by Defendants during the citizen's Complaint Register ("CR") investigation. (Mot. at 6.) Defendants filed a motion *in limine* (number 7), seeking to "bar evidence, testimony, or argument of prior citizen complaints, including the CR investigation in the present case, and/or other prior or current lawsuits for alleged police misconduct." (Defs.' Mot. *in Limine* 5-7 at 3.) At the pretrial conference, Plaintiff's counsel was asked if they would seek to introduce any evidence relating to prior citizen complaints, and their response was "no." (Pretrial Conf. Tr. 14:16 – 14:20, Nov. 8, 2011.) This motion *in limine* was then granted. (*Id.*) A discussion then followed, because Plaintiff's counsel (erroneously) believed Defendants' Motion *in Limine* 7 "only . . . talks about prior complaints." (Pretrial Conf. Tr. 14:20 – 15:10, Nov. 8, 2011.) The parties and the Court discussed the ability of Plaintiff to impeach Defendants with specific instances of untruthfulness through the CR investigation. (Pretrial Conf. Tr. 15:4 – 22:24, Nov. 8, 2011.) At the end of this discussion, the Court affirmed its ruling but provided Plaintiff the opportunity to revisit the issue at trial, stating: "So I am going to grant the motion. But if you can show me something - - as a matter of fact, let's do this: Why don't I take that [the issue of introducing extrinsic

17

evidence to impeach Defendant as to his truthfulness] under advisement. At the time when you're going to bring this up, you will approach the bench and tell me exactly what you're going to ask of whom." (*Id.*)

Despite the direction from the Court to approach the bench and address this issue prior to introducing this information to the jury, Plaintiff's counsel, before the jury, asked Defendant: "You gave a statement to investigators, is that correct . . . in connection with this case?" (Trial Tr. 80:4 – 80:7, Nov. 14, 2011.) At this point, Defendants' counsel objected and requested a sidebar, and the Court reaffirmed its ruling regarding the barring of evidence from the CR investigation. (Trial Tr. 81:1 – 87:12, Nov. 14, 2011.) Following this ruling, Plaintiff filed a motion, requesting the Court to reconsider its ruling. This motion attempted to limit and mischaracterize Defendants' Motion *in Limine* 7, and the Court addressed this on the record. (Trial Tr. 210:1 – 217:23, Nov. 15, 2011.) In presenting Plaintiff's motion to reconsider (outside the jury's presence), Plaintiff's counsel, Edward Fox, admitted he never read Defendants' Motion *in Limine* in its entirety and was unaware that the motion permitted some of Plaintiff's statements from the CR investigation to be admitted by Defendants. (Trial Tr. 213:20 – 216:17, Nov. 15, 2011.) Defendants' counsel acknowledged during this hearing that they no longer planned to use Plaintiff's statements from the CR investigation. (Trial Tr. 217:25 – 218:3, Nov. 15, 2011.) The Court reaffirmed its ruling granting Defendants' Motion *in Limine* 7. Even if Plaintiff did object to Defendants' Motion *in Limine*, the Court, after lengthy and careful consideration (and reconsideration), chose to grant the motion and bar Defendants' prior inconsistent statements. Plaintiff submits no argument as to why

18

this ruling was made in error, only that "the prior statements are and should have been admissible," without providing explanation as to the statements' relevance. (Mot. at 7.) Merely arguing that these statements would have been useful to Plaintiff's case does not explain why their probative value was substantially outweighed by their prejudicial effect. Therefore, Plaintiff's motion for a new trial on the basis that the Court erred in barring Defendants' prior inconsistent statements is denied for these reasons. Moreover, Plaintiff has failed to show how the Court's ruling affected his substantial rights at trial.

### Barring Use of Plaintiff's Prior Consistent Statement

Plaintiff also argues the Court erred in denying admission of Plaintiff's statement in the Office of Professional Standards ("OPS") investigation. (Mot. at 7-8.) At trial, Plaintiff testified on direct examination that Defendant Shields injured him outside the Marshall Field Gardens, where the underlying incident took place, and that Defendant Malaniuk injured Plaintiff inside the 18th District police station. (Trial Tr. 276:2 – 280:25, Nov. 15, 2011.) This contradicted Plaintiff's statements during his deposition, where, according to those statements, Defendants' roles were reversed, and Defendants impeached him on this point at trial. (Trial Tr. 357:14 – 368:11, Nov. 16, 2011.) Following this impeachment, Plaintiff's counsel sought to rehabilitate his testimony by bringing in statements from the OPS investigation. This, too, was barred in Defendants' Motion *in Limine* 7, which the Court granted, as discussed above. The Defendants stated in the Motion in *Limine* that they would possibly seek to introduce a statement by the Plaintiff from the OPS investigation for the limited purpose of impeaching the Plaintiff, but, as mentioned above, Defendants rescinded this intention and stated on the record that

19

no statements from the OPS investigation would be used during their case. Therefore, the Court properly persisted in its ruling, which granted Defendants' Motion *in Limine*, barring information from the OPS investigation.[6]

Furthermore, even if the ruling against the admission of Plaintiff's statement during the OPS investigation was in error, this error was harmless. Had Plaintiff's statement from the OPS investigation been admitted, it would not have changed the fact that Plaintiff's testimony at trial had differed from his sworn deposition testimony; Plaintiff's in-court testimony would still have been properly impeached by the Defendants. Therefore, this additional information from the OPS investigation would not have changed the outcome of the trial, and Plaintiff's substantial rights were unaffected by this ruling. *Farfaras*, 433 F.3d at 564. Thus, Plaintiff's motion for a new trial due to the barring of Plaintiff's statement during the OPS investigation is denied.

### *Objections Made During Answers to Questions*

Plaintiff further argues that the Court's admonishment of Plaintiff's counsel with respect to raising objections in the midst of testimonial responses was unfairly prejudicial and warrants a new trial. However, Federal Rule of Evidence 103(a)(1) requires a party claiming an error to "*timely object* or [move] to strike." Fed. R. Evid. 103(a)(1) (emphasis added).

---

[6] Plaintiff also cites Fed. R. Evid. 801(d)(B) in his motion. (Mot. at 7.) This rule permits the introduction of prior consistent statements "to rebut an expressed or implied charge against the declarant of recent fabrication or improper influence or motive." Plaintiff does not claim or specify any such charge by Defendants against Plaintiff as a witness.

Objections must be raised after the question is asked but before the witness answers. This permits the Court to consider the basis of the objection before the jury hears information it should not.

> Trial objections must be made at the earliest practicable time after an intent to offer objectionable testimony becomes apparent. Failure to make a timely objection will result in waiver of the alleged error. Therefore, as soon as the opposing counsel asks an objectionable question, the objection should be stated to the court. Courts have held that objections raised after the answer is given are not adequate, unless the answer was given so quickly that objection could not possibly be interposed.

Roger C. Park, *Trial Objections Handbook*, 2d, § 1:3 Timing of Objections (2012). By requiring Plaintiff's counsel to follow simple and basic rules of trial practice, observed regularly by lawyers in this district and across the country, the Court did not commit prejudicial error. The proper time to raise an objection is after the question, not simply when it becomes apparent to counsel that a witness is giving damaging testimony. As the Court explained to counsel at sidebar:

> MR. KSIAZEK: Judge, with regards to the issue of my objecting, I'm trying to do my best to - -
>
> THE COURT: Well, doing your best will include letting your client finish his answer, because all it does is mess up the examination of your opponent. He's entitled to cross-examination, just as you were entitled to adversely examine those policemen and no one interrupted you.
>
> MR. KSIAZEK: I understand.
>
> THE COURT: It's in my interest to see that this thing moves along as efficiently and as effectively as possible. When you do that, the jurors have difficulty following the examination. So, I'm telling you, do not do that again.
>
> Do you understand me?

MR. KSIAZEK: I do understand, Judge. There's some answers that may be objectionable that I don't want to get - -

THE COURT: Then your obligation is to interpose an objection before the question is answered. If the question doesn't fairly call for the objectionable answer, you're not deemed to have waived the answer. Your remedy then is to move to strike the answer. But the one thing you may not do is interrupt the answer.

If you're wrong, as you have been here, we're going to have to go back and try to get the witness to recreate the answer. That disturbs the pace of cross-examination. That's an unfair tactic and I don't want you to do it again.

Do you understand me?

MR. KSIAZEK: I do understand, Judge.

THE COURT: Good.

MR. KSIAZEK: I'm doing my best to try to get it within the timing. The client is giving answers very fast and - -

THE COURT: No, he's not giving answers very fast. He might be giving answers you don't like, and that's certainly understandable.

Do not interrupt either the witness when he's answering or the examiner when he's asking the question.

(Trial Tr. 313:16 – 315:2, Nov. 15, 2011.) On this point, the error rests solely with

Plaintiff's counsel. It is also noted that this conduct by Plaintiff's counsel occurred only

during cross-examination of Plaintiff.[7] Thus, a new trial is unwarranted due to Plaintiff's

---

[7] Moreover, the above admonition by the Court at sidebar occurred only after Plaintiff's attorney had repeatedly improperly interrupted the cross-examination. *See* Trial Tr. 296:5 – 296:18, Nov. 15, 2011:

MR. LEVY: But you didn't know whether the baby was born or not when you gave your deposition, right?

counsel's failure to object to questions prior to the responses of the witness, and

Plaintiff's motion is denied as to this issue.

---

> PLAINTIFF: Sir, I said I didn't know the time limit - -
>
> MR. KSIAZEK: Objection, to - -
>
> THE COURT: I'm sorry?
>
> MR. KSIAZEK: Improper impeachment, argumentative, your Honor.
>
> THE COURT: Overruled.
>
> MR. LEVY: Sir?
>
> THE COURT: Did you hear that question and answer, ladies and gentlemen?
>
> I will ask you to wait until the answer is completed before you object.

*See also* Trial Tr. 299:23 – 300:6, Nov. 15, 2011:

> MR. LEVY: You have no idea how much time passed between the time you went outside to get the groceries and when the police arrived?
>
> PLAINTIFF: I never got a chance to get - -
>
> MR. KSIAZEK: Objection.
>
> PLAINTIFF: - - the groceries.
>
> THE COURT: Do not object while the question is being made or the answer is being given.

*See also* Trial Tr. 312:10 – 312:25, Nov. 15, 2011:

> MR. LEVY: I see. And how do you know that?
>
> PLAINTIFF: Because that's like - -
>
> MR. KSIAZEK: Objection, relevance.
>
> PLAINTIFF: - - their procedure.
>
> THE COURT: Overruled.
>
> I'm sorry? What was the - - I'm not going to ask you to refrain from doing that again, Counsel.
>
> Mary, would you read the question and would you read the answer back to where it was interrupted, and then you will finish the answer.

*The Court's Alleged Bias*

Finally, Plaintiff moves for a new trial on the basis that the Court was unduly biased against Plaintiff and Plaintiff's counsel. (Mot. at 10-11.) Some examples of this alleged bias included admonishing Plaintiff's counsel to refrain from interrupting witness testimony, as discussed above, and "assum[ing] the role of advocate." (Mot. at 10.)

To move for a new trial on the basis of judicial bias, the movant must show the conduct of the Court "so impairs the lawyer's credibility in the eyes of the jury as to deprive the client of a fair trial." *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 703 (7th Cir. 2007) (quoting *Cooper v. Casey*, 97 F.3d 914, 918 (7th Cir. 1996)). Moreover, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (*Liteky*).[8] No unduly

---

[8] In this regard, the following colloquy occurred between Plaintiff's counsel and the Court at sidebar:

> MR. FOX: I would like to ask for a mistrial because I think it's clear now, Judge, that you don't like us, and I think there's been some error in the rulings.
>
> . . .
>
> THE COURT: I have no animus towards anyone. It is my obligation to see that this proceeding is conducted fairly to both sides and that the jury, consistent with the Rules of Evidence, hears all of the relevant information they should hear.
>
> And I have reminded the parties that my job depends to a great extent on the good faith efforts of the lawyers not to misrepresent what's happened in the past, not to

critical or hostile remarks against Plaintiff and Plaintiff's counsel occurred at trial, particularly in the presence of the jury, nor did the Court advocate for either party but, rather, applied the rule of law and the Federal Rules of Evidence as evenly and judiciously as possible. Motions were granted in favor of both parties; objections were sustained in favor of both parties, all based on the law and the Federal Rules of Evidence.

> misrepresent the record.
>
> And my comment a few moments ago about your conduct, Mr. Fox, was directly related to your statement that the plaintiff here said something on the witness stand which was absolutely incorrect and directly opposite from what you had represented, and you made that statement to try to induce me to rule on the issue that was before me in favor of your client. When a lawyer does that, it makes governing the proceedings very difficult. And I asked you not to do that.
>
> In my response to my comments to [Plaintiff's Counsel] Jonathan [Ksiazek], when I ruled against him at sidebar he turned his back away from me, and as he was turning had a look of disgust on his face, which was clearly evident to the jury. And I cautioned him off the record that that kind of conduct was not only counterproductive to his ability to persuade the jury, but it also was an offense on the Court. It showed disrespect for my rulings.
>
> So there will be no mistrial. I have no animus towards anybody. But I am going to insist that you be forthright with the Court at all times, and I will insist that the other side do that as well.

(Trial Tr. 369:5 – 369:7, 369:14 – 370:22.) The Supreme Court explained how difficult the showing of judicial bias is, identifying that expressions "*not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration - remain immune." *Liteky*, 510 U.S. at 555-56.

When the Court questioned counsel's tactics, it did so at sidebar, outside the jury's presence. The jury returned a verdict in favor of Defendants.

No rulings made by this Court unfairly prejudiced Plaintiff's case, and none of the issues Plaintiff raises would have resulted in a different verdict had the issues been resolved differently. Therefore, Plaintiff's motion for a new trial on the basis of judicial bias is therefore denied.

### CONCLUSION

Based on the foregoing analysis, Plaintiff's Motion for a New Trial is denied.

Date: 6-8-12

JOHN W. DARRAH
United States District Court Judge